(C. D. 1629)

D. N. & E. WALTER CO.
HOYT, SHEPSTON & SCIARONI } *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 30, 1954)

Lawrence & Tuttle (George R. Tuttle and Charles F. Lawrence of counsel); Siegel, Mandell & Davidson, associate counsel; for the plaintiffs.

Warren E. Burger, Assistant Attorney General (Daniel I. Auster, Richard E. FitzGibbon, Chauncey E. Wilowski, Joseph E. Weil, and Richard H. Welsh, trial attorneys), for the defendant.

Joseph F. Lockett and Walter E. Doherty, Jr. (Walter E. Doherty, Jr., of counsel) as amici curiae.

Before OLIVER and MOLLISON, Judges

OLIVER, Chief Judge: The merchandise in the case at bar consists of certain hooked rugs imported from Mexico. They were classified under paragraph 1117 (c) of the Tariff Act of 1930, as floor coverings, wholly or in chief value of wool, not specially provided for, valued at more than 40 cents per square foot, with a duty assessment at the rate of 60 per centum ad valorem. Plaintiffs claim the merchandise properly dutiable under paragraph 1116 (a) of the tariff act, as modified by the Iranian Trade Agreement, T. D. 51067, under the provisions therein for "* * * other carpets, rugs, and mats, not made on a power-driven loom, plain or figured, whether woven as separate carpets, rugs, or mats, or in rolls of any width * * *," at the rate of 25 cents per square foot, but not less than 22½ per centum ad valorem.

The pertinent provisions of the involved statutes are as follows:

Paragraph 1117 (c):

(c) All other floor coverings, including mats and druggets, wholly or in chief value of wool, not specially provided for, valued at not more than 40 cents per square foot, 30 per centum ad valorem; valued at more than 40 cents per square foot, 60 per centum ad valorem.

Paragraph 1116 (a), as amended by the Iranian Trade Agreement, T. D. 51067:

Oriental, Axminster, Savonnerie, Aubusson, and other carpets, rugs, and mats, not made on a power-driven loom, plain or figured, whether woven as separate carpets, rugs, or mats, or in rolls of any width, 25¢ per square foot, but not less than 22½% ad valorem.

In support of the collector's classification, the defendant contends that the provisions of paragraph 1116 (a), as amended, *supra*, for "Oriental, Axminster, Savonnerie, Aubusson, and other * * * rugs, * * * not made on a power-driven loom," are limited to handmade, woven rugs, which are of the same class or kind as the Oriental, Axminster, Savonnerie, and Aubusson rugs specifically provided for therein, and do not include the imported rugs which are claimed to be dissimilar to those named. Plaintiffs, on the other hand, maintain that the rule of *ejusdem generis*, invoked by the defendant, is inapplicable; that these hooked rugs are "woven" to the same extent that Orientals and the other named rugs are woven; and that, not being made on a power-driven loom, they are classifiable, as claimed.

At the trial, a number of exhibits were introduced in evidence. Plaintiffs' illustrative exhibit 1 is a sample of an Oriental rug imported from India. Plaintiffs' collective illustrative exhibit A is photographs of looms, used in producing the cotton base fabric of the imported rugs. Plaintiffs' illustrative exhibit B is a sample of the "hooker" or tool, which is used in forming the hooked rugs. Plaintiffs' illustrative exhibit C is a photograph, illustrating the production of the rugs here in issue. Plaintiffs' exhibit D consists of a piece of a hooked rug, which is representative of the merchandise at bar. Plaintiffs' exhibit E is a label for hook rugs, manufactured by one of the defendant's witnesses in China, which indicates them as being handmade. Plaintiffs' illustrative exhibit 2 is a sample of a hooked rug with a cut pile. The defendant introduced in evidence, as illustrative exhibit F, a miniature Chinese rug loom to illustrate how an Oriental rug, not made on a power-driven loom, is made.

Plaintiffs' principal witness was the Mexican manufacturer of the imported hooked rugs, Juan Gomez Abascal, who testified by way of a deposition. Two other witnesses testified at the trial on behalf of the plaintiffs. Their testimony, however, was not relevant to the issue herein.

Plaintiffs' witness Abascal described the production of the hooked rugs. His testimony, in that connection, is substantially as follows:

A cotton backing, or base fabric, is made, prior to the hooking of the rug itself, on a hand-operated loom. The loom consists of two warp beams, with thread wound on one of the beams. After this thread passes through the comb of the loom and the heddles, the shuttle passes, leaving a weft. The comb then tightens the weft,

while the heddles make another crossing, and, after being formed, the fabric is wound on the other warp beam. The cotton backing, or base fabric, is made entirely by hand. The base fabric is then stretched across a wooden frame, which is held in place by rows of nails, and an operator punches or inserts wool yarn into the base fabric by means of an instrument called a "hooker" (plaintiffs' illustrative exhibit B), forming color designs or simple scallops. This hooker is operated entirely by hand. The yarn inserted remains in place by pressure. After the work on the cotton base is completed, there remains a margin of cotton fabric on which no woolen yarn has been inserted; this margin is folded to the reverse side of the rug to form a hem, which is sewed by hand with cotton thread, thus completing the rug.

The witness further testified that warps and wefts are used only in the making of the base fabric but that his factory had never produced rugs by the warp and weft system in making rugs such as those imported.

The defendant introduced the testimony of five witnesses, all of whom were well qualified to give testimony concerning the matter here under discussion. For extensive periods, they had been either importers or manufacturers of hooked rugs such as those imported and were also familiar, as dealers and importers, with the nature and production of Oriental rugs and other types enumerated in paragraph 1116 (a), as amended, *supra*, having seen them in the process of manufacture. Their testimony as to the method of production of hooked rugs paralleled that given by plaintiffs' witnesses.

Particularly, defendant's witnesses testified that there is a distinct difference between hooked rugs such as those at bar and the type of woven rugs enumerated in said amended paragraph 1116 (a). They stated that, in the production of hooked rugs, the yarn is usually not inserted in a straight line from right to left across the base fabric, unless a design in a straight line is desired, which, they stated, was very unusual. The witnesses testified that, in the case of woven rugs, each line of the pile is always woven straight across before the next line or row of yarn is woven. They further stated that hooked rugs are not woven rugs, nor are they made with a warp and weft, as in the case of Orientals and other rugs named in the provision under which plaintiffs claim the imported rugs are classifiable, although there is a warp and weft construction in the base fabric of the hooked rug; that the base fabric, however, used in the manufacture of hooked rugs is a prefabricated article and is not woven in conjunction with the forming of the rug, itself, but exists as an entirely separate feature in the process of manufacturing of hooked rugs; that woven rugs, such as Orientals and the others enumerated, all have a warp and weft woven into them as part of the rug, itself, and which do not have a separate existence prior to the formation of the rugs in the latter class.

Defendant's witnesses further testified that hooked rugs such as plaintiffs' exhibit D are so constructed that if one were to pull a piece of yarn in the rug, all sections of that particular color yarn could be pulled out, leaving the base fabric in the same condition as it was prior to the hooking of the yarn, whereas, if a small piece of yarn could be pulled out of the woven rugs enumerated in paragraph 1116 (a), as amended, *supra*, only one small tuft would come out and the remainder of the rug would be intact.

Pertinent to the present issue is the uncontroverted testimony of defendant's witnesses in this case concerning the production of Oriental rugs and other rugs *eo nomine* provided for in said amended paragraph 1116 (a). The record supports the following description of the manufacture of such rugs.

In making Oriental rugs, the warp yarns are first strung up horizontally between two rollers or beams. The operation starts either at the bottom or the top, generally at the bottom. Pieces of wool yarn are then hand-tied to the warp strings across in a straight line to form the pile. Then, a weft string is inserted by the operator under and over the warp thread or vertical string, and the whole line is pounded or pressed down tight against the knotted pile. Then, another row of knotted wool yarn is inserted, followed by another weft string, and this process continues until the entire rug is made. Each tuft is cut, so that the pile is not a continuous length of yarn that runs across the whole rug, which process is unlike that employed in the manufacture of hooked rugs, where the yarn is not cut off each time but wherein the rug is made with a continuous colored yarn, and then other continuous colored yarns are employed. The "knotted" pile of an Oriental rug is not necessarily a tied knot, but may be merely looped around the warp and then twisted. In any case, the wool yarn is securely fastened around the warp thread so that it will not slip and cannot be pulled out. No base fabric is ever used in the production of an Oriental rug. Chinese Oriental rugs (made on a regular size loom similar to plaintiffs' illustrative exhibit F) are produced in a manner similar to that above described.

The defendant's witnesses further testified that Axminster and Savonnerie rugs (paragraph 1116 (a), *supra*) are produced as are Orientals, hand-woven with a warp and weft system, having a knotted pile. Aubusson rugs are flat handwoven rugs, with no pile but having a warp and weft in their construction.

Counsel for the plaintiffs, in support of their claim that these hooked rugs are properly classifiable under paragraph 1116 (a), as amended, *supra*, relies mainly upon the holding of this court in the case of *The Emporium Capwell Co. v. United States*, 24 Cust. Ct. 407, Abstract 54164, involving merchandise produced in a manner similar to the process employed in the manufacture of the rugs here in question,

and wherein the same claim and classification were made as in the case at bar. Upon the record therein presented, this court held that the involved rugs were "handmade articles, within the class of merchandise included under the provision for 'other carpets, rugs, and mats, not made on a power-driven loom' in paragraph 1116 (a), as amended, *supra*," and properly dutiable thereunder, as claimed. The record in the *Emporium* case, *supra*, is, however, different from the record made in the case at bar, wherein the factual situation is more completely set forth. The issue in the cited case was limited to the sole inquiry whether or not the fact that the base fabric of the involved rugs was not made on a power-driven loom was legally sufficient to exclude them from classification under paragraph 1117 (c), *supra*, as classified, and relegate them to paragraph 1116 (a), as amended, as claimed. In the case at bar, the issue has wider application, namely, whether the entire process of manufacture of the imported hooked rugs, as compared with the process of manufacture of the rugs which are *eo nomine* provided for in said amended paragraph 1116 (a), *supra*, evidences such a dissimilarity so as to exclude the rugs at bar from classification thereunder.

In *The Emporium Capwell* case, *supra*, this court gave consideration to the decisions of our appellate court in *United States* v. *Marshall Field & Co.*, 18 C. C. P. A. (Customs) 403, T. D. 44642, and *New England Guild* v. *United States (International Clearing House of New York, Inc., Appearing as Party in Interest)*, 26 C. C. P. A. (Customs) 42, T. D. 49577. It appears pertinent at this juncture to discuss the latter cases and the applicability of the court's findings therein to the present issue.

In the *Marshall Field* case, *supra*, the merchandise consisted of certain wool rugs made on a cotton webbing, which was first woven on a power loom. Upon this webbing, which made up the base or foundation of the rug, there was first stenciled the design. The webbing was then stretched in a frame, and yarns of different color were looped into the webbing and cut by a patented machine. The yarns were looped around a portion of the webbing, and both cut ends on the top of the rug formed the pile. The yarns were not knotted or tied in any manner and were easily removed by pulling the loop on the bottom side of the rug. The process there employed disclosed that the rugs were produced in a manner somewhat similar to that in which hooked rugs are manufactured, except that in producing the hooked rug the yarn continues through the whole of the weaving, whereas in the cited case the yarn was cut after it was looped by the needle in and through the webbing.

The court in the *Marshall Field* case, *supra*, after finding that the involved rugs were not of "like character or description" to Wilton

rugs, discussed the applicability of paragraph 1116 [Tariff Act of 1922] to the merchandise, stating (pages 407–408) as follows:

Oriental, Axminster, Savonnerie, and Aubusson carpets and rugs are of the handmade variety. The oriental rug ordinarily comes from the Orient. Some of the rugs mentioned in the paragraph are made in Europe, but they have the same general characteristics as those made in the Orient, chief of which is that they are made by hand. A loom is so arranged that the warp threads stand perpendicular and run parallel in front of the weaver. * * * The woolen yarns which are intended for the tufts to make the pile or woolen body of the rug are cut into short lengths of probably two inches; and as the weaver inserts the weft threads, by hand, the yarn is knotted, by hand, around the warp threads with the loose ends all on one side. The weft threads are, by hand, pounded close together, thus making a solid nap or pile.

\*        \*        \*        \*        \*        \*        \*

Now, the question. presents itself: What kind of merchandise did Congress intend to include by the term "and other carpets and rugs not made on a power-driven loom"? Orientals, Axminsters, Savonneries, and Aubussons were not made on power-driven looms, but all of the rugs that were in the paragraph were either made by hand—that is, the knots were tied by hand—or else they were made by a machine which gave them substantially the handmade construction. It is not fair to assume then that Congress intended to include under the term "and other carpets and rugs not made on a power-driven loom" carpets like the ordinary domestic unknotted rag carpets which are made by hand, and other kinds of carpets and rugs having wholly different characteristics than those first mentioned in the paragraph.

The instant importation imitates an oriental rug in color and in the figure which has, by machine, been needled into the same. Outside of this similarity we can find very little, if anything, that brings the instant importation into the same class as those rugs provided for in paragraph 1116. The rug before us *contains no knots* except in the selvage of the web. The wool yarns used to make the pile are sometimes *looped* around the weft threads and sometimes around the warp threads of the base fabric, and at times they are looped around portions of both weft and warp threads. *They are not tied and are easily removed from the fabric* and in our judgment *have none of the durable and desirable qualities* in this regard *as characterize the tufts or pile yarns in the rugs provided for in paragraph 1116.* [Italics ours.]

In the *New England Guild* case, *supra,* the merchandise consisted of certain hooked rugs on a base fabric cut from a piece of burlap made on a power-driven loom. The process employed, in the making of the rugs there under consideration, was similar to that used in making the hooked rugs in the case at bar. In overruling the protest claim for classification of the merchandise under paragraph 1116 (a) of the Tariff Act of 1930, our appellate court stated:

Appellant proceeds on the theory that the rugs herein, not being made on a power-driven loom, are handmade, and because they are cheap they must be low-grade oriental rugs competing with the higher grades of American machine-made rugs. We can see nothing oriental about the rugs herein in appearance, design, or structure. We cannot agree with appellant that the rugs in this case are hand-

made. They are certainly not so made as compared to the making by hand of the imported rugs so well described by the witnesses.

All of the testimony in the case is to the effect that, as to the handmade rugs provided for *eo nomine* in said paragraph 1116 (a), *the warp, the weft, and the colored material are looped or knotted or fastened together by the fingers, and the whole body of the article is gradually formed row upon row* by such manipulation until the rug is completed. *This seems to us clearly to show a handmade rug.* \* \* \*

On the contrary, the rugs involved here have no handwork about them at all except the guiding and manipulating of an apparatus which, without any skill or art on the part of the operator, automatically forms and regulates the loops on a stenciled design. \* \* \* The loops are put on by a hand-powered and directed machine. We cannot, on the record before us, hold that the rugs herein are handmade rugs as intended by Congress, and since, as appellant argues, congressional intent seems to include within said paragraph 1116 (a) "only handmade articles," it must necessarily follow that classification of the rugs herein cannot be under that paragraph. [Italics ours.]

It thus appears from the reasoning of our appellate court in the above-cited cases, that merchandise, to be classifiable under the provisions in paragraph 1116 (a), as amended, *supra,* for "carpets, rugs, and mats, not made on a power-driven loom," must be of the same class or kind as those *eo nomine* provided for in said paragraph, and if not *ejusdem generis* with those rugs specifically mentioned, they are not classifiable thereunder.

We are persuaded that the record in the present case warrants the finding of a conclusion different from that found by this court in *The Emporium Capwell* case, *supra.* The hooked rugs in the case at bar are not of the class or kind *eo nomine* provided for in said amended paragraph 1116 (a), *supra,* under which plaintiffs claim. In the construction of Orientals, "the warp, the weft, and the colored material are looped or knotted or fastened together by the fingers, and the whole body of the article is gradually formed row upon row by such manipulation until the rug is completed." (*New England Guild* case, *supra.*) The uncontroverted testimony of defendant's witnesses in the present case establishes that in the case of Orientals and other rugs enumerated in paragraph 1116 (a), *supra,* the warp and weft are all done at one time and are part of the actual manufacture of the rug itself, whereas in the manufacture of the imported hooked rugs, the base fabric is made independently. "One becomes part of the rug; the other is entirely separate; it is an entirely separate feature."

While the base fabric of the hooked rugs at bar is woven with a warp and weft, the process employed in the completion of the hooked rug, itself, is dissimilar to that used in the making of the rugs *eo nomine* provided for in paragraph 1116 (a). In the making of Orientals, warp and weft threads are employed, with pieces of yarn tied to the warps across in a straight line to form the pile, and the whole line is

pounded down tight against the knotted pile, the operation continuing until the completion of the rug. The tufts which are tied to the warps are cut so that the pile is not a continuous length of yarn, which is not the process employed in the construction of hooked rugs. The record discloses that in the case of nearly all Orientals, loosening of the tufts is rendered difficult, if not impossible, making for greater durability, a characteristic feature of Orientals and rugs of that class, whereas hooked rugs employ in their manufacture long strands of yarn, which can be more easily loosened, thus rendering such rugs less durable than Orientals. Axminster and Savonnerie rugs are made in substantially the same manner as Oriental rugs, having characteristic features likewise distinguishable from hooked rugs.

The fact that the imported rugs and those specifically mentioned in said amended paragraph 1116 (a) have, in common, the characteristic that they are not made on power-driven looms, is not, in our opinion, alone sufficient to permit classification under the claimed paragraph. In our opinion, the manner of construction of the imported rugs is so dissimilar to the process of making rugs such as are *eo nomine* provided for in paragraph 1116 (a), as amended, *supra*, as to result in a type of rug so different from those provided for in the latter paragraph that these hooked rugs are not of the class or kind of rug provided for in said amended paragraph and, accordingly, are not classifiable thereunder.

Supporting the above conclusion, although not alone decisive of our determination herein, is the information contained in the Summaries of Tariff Information, volume 11, part 2, 1948 edition, issued by the United States Tariff Commission, wherein with reference to paragraph 1117 (c), *supra*, under the heading "Wool Floor Coverings, Including Mats and Druggets, N. S. P. F.," the following statement is made (p. 133):

Wool floor coverings, including mats and druggets * * * covered in this summary, have been principally wool druggets and Numdah rugs from India, and wool hooked rugs from China and Japan. Floor coverings of this character, with the possible exception of hooked rugs, are not produced in the United States.

*　　*　　*　　*　　*　　*　　*

Wool hooked rugs are made by hand, using a small hand punch or an electrically driven needle to punch yarns (or, in some rugs, rag strips) through the meshes of jute burlap so as to form a looped pile on the face or top side. * * *

* * * In 1946 Mexico was next to India the most important source.

Upon the basis of the record presented in this case, we hold that the hooked rugs at bar are properly dutiable under the provisions of paragraph 1117 (c) of the Tariff Act of 1930, as classified. The protest claim is overruled. Judgment will be rendered accordingly.